UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
MAGALY E. HERIVEAUX,

      Plaintiff,       **REPORT AND RECOMMENDATION**
                    **17 CV 6178 (ENV)(LB)**

   -against-

THE ADDICTION REHABILITATION
CENTER,

      Defendant.

-------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

  Plaintiff, Magaly E. Heriveaux, filed a *pro se* complaint alleging her former employer, The Addiction Rehabilitation Center, discriminated against her by failing to accommodate her request to observe the Sabbath. She brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1) ("Title VII"). Defendant failed to respond to plaintiff's complaint.[1] The Court held a conference on December 1, 2022 at which Ms. Heriveaux appeared.[2] ECF No 16. Plaintiff now moves for a default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. The Honorable Eric N. Vitaliano referred plaintiff's motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). However, as explained in this Report, plaintiff has not sufficiently established that defendant discriminated against her in violation of Title VII. Therefore, it is respectfully recommended that plaintiff's motion for a default judgment should be denied.

---

[1] Defendant may be out of business. Copies of the Court's October 18, 2022 and December 2, 2022 orders sent to defendant at the address plaintiff provided were returned as undeliverable. See ECF Nos. 15, 18.

[2] At the conference, Ms. Heriveaux presented herself well. I informed plaintiff that despite defendant's failure to respond, she must carry her burden to establish that defendant violated her rights under Title VII.

## BACKGROUND[3]

Plaintiff, a member of the Hebron French Speaking Seventh-day Adventist church, was employed by defendant as a Primary Counselor from January through December 2016. ECF No. 1 ("Compl") at 6; ECF No. 17-2 at 6. A May 20, 2016 letter from plaintiff's church states that the Holy Sabbath begins Friday at sunset and continues until Saturday at sunset, and requests that defendant provide plaintiff with a "special arrangement that will satisfy her financial and spiritual needs." ECF No. 17-2 at 6. Plaintiff, attaching this letter, requested a religious accommodation from defendant in June 2016 so she could observe the Sabbath. Compl. at 6; ECF No. 17-2 at 7. Specifically, plaintiff requested that defendant change "her work hours on Fridays from 1:00 PM to 9:00 PM to an earlier work schedule[,]" a request she made "on several occasions. . . ." Compl. at 6. Plaintiff's "supervisor, Ms. Burwell refused to grant her request." Id. Although not stated in the complaint, plaintiff was apparently terminated from her job with defendant on or around December 8, 2016. ECF No. 12 at 25.

Plaintiff experienced "much suffering and grief as a result of losing employment" and was not able to secure another job until December 8, 2019, roughly three years after she worked for defendant. ECF No. 17-1 ¶ 6. Plaintiff filed a complaint alleging discrimination with the EEOC on December 28, 2016. Compl. at 6. After defendant failed to "submit a written response to the

---

[3] The facts here are drawn from plaintiff's complaint, ECF No. 1 ("Compl."), including the Equal Employment Opportunity Commission's letter annexed and incorporated into the complaint, compl. at 6, and plaintiff's motion for default judgment. ECF No. 17.  The Court also considers the uncontroverted documents annexed to plaintiff's request for a certificate of default, which she mailed to defendant. ECF No. 12; id. at 7; see Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) (finding that "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs" establish liability on motion for default judgment); Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., 505 F. Supp. 3d 137, 150 (N.D.N.Y. 2020) (collecting cases where courts looked to material outside the complaint on a motion for default judgment). The Court references the ECF numbers at the top of plaintiff's documents.

EEOC regarding the allegations of religious discrimination[,]" the agency found "reasonable cause" to believe defendant violated Title VII by failing to offer plaintiff a religious accommodation. Id. The EEOC issued plaintiff a right to sue letter on July 20, 2017. Compl. at 5.

## PROCEDURAL HISTORY

Plaintiff commenced this *pro se* employment discrimination action on October 20, 2017. On November 8, 2017, plaintiff's motion for leave to proceed in forma pauperis was granted. ECF No. 4. A summons issued on November 8, 2017, ECF No. 5, and was returned executed on January 10, 2018. ECF No. 6. On April 18, 2018, plaintiff requested a default judgment after defendant failed to respond to the complaint. ECF No. 7. The Court ordered the Clerk of Court to issue another summons and for the US Marshal Service "to serve the summons, complaint, and this Order upon the defendant. . . ." Order dated July 29, 2020. The summons was again returned executed on June 2, 2021. On July 6, 2021, plaintiff renewed her request for a certificate of default, ECF No. 12, and the Clerk noted entry of default on July 23, 2021. ECF No. 13.

The Court scheduled a conference on December 1, 2022 and directed defendant to appear. ECF No. 14. The Court's conference Order was mailed to defendant at the only address listed for defendant and was returned as undeliverable on November 18, 2022. ECF No. 15. Although defendant did not appear, the conference proceeded and the Court directed plaintiff to file any motion seeking a default judgment by January 12, 2023. ECF No. 16. Plaintiff filed the motion as directed. ECF No. 17. The instant motion was referred to me for a Report and Recommendation. Order dated Mar. 29, 2023.

## DISCUSSION

**Standard of Review**

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after the clerk has noted entry of a defendant's default, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment.  Id. 55(b)(2).  In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored."  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  "Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right[.]" Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc., No. 08-CV-3168, 2009 WL 4929419, at *2 (E.D.N.Y. Dec. 21, 2009) (citing Erwin DeMartino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).[4]

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (citations omitted). In determining whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief."  Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  In other words, "'[a]fter default . . . it remains for the court to consider whether the

---

[4] The Clerk of Court is directed to send plaintiff the attached of copies of all the unreported cases cited herein.

unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" Id. at 153 (internal quotation and citation omitted).

## I. Liability Under Title VII

### A. Whether Defendant is an "Employer"

Under Title VII, it is an unlawful employment practice for an employer to discriminate against an individual on the basis of their religion. 42 U.S.C. § 2000e-2(a). However, not every business is subject to Title VII. Rather, the definition of an "employer" under Title VII is limited, in relevant part, to "a person engaged in an industry affecting commerce **who has fifteen or more employees** for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C. § 2000e(b) (emphasis added). Failure to allege a defendant has fifteen or more employees constitutes a failure to state an essential element of a Title VII claim: that the defendant is an "employer." See Gordon v. APS Contractors Inc., No. 21-CV-00259, 2023 WL 2574740, at *5 (E.D.N.Y. Mar. 20, 2023) (denying motion for default judgment because plaintiff failed to plead whether defendant "satisfies" Title VII's definition of employer); Aponte v. Clinton St. Pizza Inc., No. 20-CV-2037, 2021 WL 1961646, at *4 (S.D.N.Y. May 17, 2021) ("The Complaint contains no facts regarding [defendant's] number of employees and, consequently, fails to state a claim pursuant to Title VII").

Here, plaintiff's complaint fails to allege that defendant has fifteen or more employees. The EEOC determination states that defendant is an employer subject to Title VII, but this assertion is conclusory. See Clayborne v. Hum. Res. Dir., No. 11-CV-3491, 2015 WL 251586, at *2 (E.D.N.Y. Jan. 20, 2015) (denying default judgment in plaintiff's age discrimination case because plaintiff "failed to allege the number of employees that [defendant] employed" as required by the ADEA,

notwithstanding an EEOC reasonable cause determination in plaintiff's favor). However, on the EEOC intake questionnaire, which is annexed to plaintiff's request for a certificate of default, plaintiff checked the box indicating defendant has between fifteen and 100 employees. ECF No. 12 at 40. Therefore, affording *pro se* plaintiff's papers the most liberal construction, the Court finds that the EEOC intake questionnaire satisfies Title VII's definition and that defendant is an employer subject to Title VII. See Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 396 (2008) (considering EEOC intake questionnaire); Ashraf-Hassan v. Embassy of France in U.S., 878 F. Supp. 2d 164, 169 (D.D.C. 2012) (noting the Court "may rely on Plaintiff's EEO Intake Questionnaire and her Equal Employment Opportunity Commission charge" on a motion to dismiss).

B.  Religious Discrimination

Even considering defendant as an employer subject to Title VII, plaintiff fails to plausibly allege that defendant discriminated against her because of her religion. To state a claim for intentional discrimination under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 86 (2d Cir. 2015). As Title VII defines "religion" to include "all aspects of religious observance and practice[,]" 42 U.S.C. § 2000e(j),  "religious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated." E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 775 (2015). A plaintiff may state a religious discrimination claim by plausibly alleging that she "actually requires" an accommodation of her religious practice "and that the employer's desire to avoid the prospective accommodation was a

motivating factor in an employment decision." Lowman v. NVI LLC, 821 F. App'x 29, 31 (2d Cir. 2020) (summary order) (internal quotation, citation, and alterations omitted).

Indeed, under Title VII, an employer has a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 75 (1977); see also Groff v. DeJoy, 143 S. Ct. 2279, 2288 (2023) (reiterating the reasonable accommodation requirements of Title VII). "[T]he rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." Abercrombie, 575 U.S. 768, 773 (2015). "To state a claim for failure to accommodate, plaintiffs must allege '(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; (3) they were disciplined for failure to comply with the conflicting employment requirement'; and (4) that they were not offered a reasonable accommodation." Sughrim v. New York, 503 F. Supp. 3d 68, 97 (S.D.N.Y. 2020) (quoting Baker v. The Home Depot, 445 F.3d 541, 546 (2d Cir. 2006)).

Plaintiff's complaint fails to establish the third element: that plaintiff was disciplined for failure to comply with the conflicting employment requirement. The Court first turns to the question of whether plaintiff identified an adverse employment action taken against her by defendant. See Brooks v. City of Utica, 275 F. Supp. 3d 370, 380 (N.D.N.Y. 2017) (noting "several courts in this circuit have equated discipline" as required in a failure-to-accommodate claim "with 'adverse employment action'") (quotation and citation omitted). Again, liberally construing

plaintiff's claim to consider material annexed to her request for a certificate of default,[5] the Court takes notice of a New York State Department of Labor document stating that plaintiff was "discharged for misconduct" on or around December 9, 2016, ECF No. 12 at 25, and a memorandum dated December 12, 2016, in which plaintiff writes that she was "informed to leave [the workplace] early on Thursday, December 8, 2016" and was told the next day that she was "being recommended for termination. . . ."[6] ECF No. 12 at 42. As discharge is an adverse employment action, Vega, 801 F.3d at 85, the Court finds that this element of plaintiff's claim is established.

However, while plaintiff requested accommodation to observe the Sabbath, she fails to allege that her religious practice was a "motivating factor" in her termination. Abercrombie, 575 U.S. at 773. "An inference of discrimination can be drawn from circumstances including 'actions or remarks made by [decision makers] that could be viewed as reflecting a discriminatory animus,' or 'preferential treatment given to employees outside the protected class[.]'" Salas v. New York City Dep't of Investigation, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) (quoting Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996)).

Plaintiff alleges that defendant failed to accommodate her request for Sabbath observance in June 2016 and then, approximately six months after that request, she no longer worked for defendant. Plaintiff does not allege—even in a conclusory manner—that she was terminated

---

[5] The EEOC determination annexed to plaintiff's complaint merely states that she worked for defendant between January 2016 and December 2016. Compl. at 6. Although plaintiff no longer worked for defendant after December 2016, the complaint leaves open the possibility that she resigned as there is no allegation that she was terminated. The distinction is significant: unlike termination, "a voluntary resignation is not an adverse employment action unless the employee was constructively discharged." Chanval Pellier v. Brit. Airways, Plc., No. 02-CV-4195, 2006 WL 132073, at *4 (E.D.N.Y. Jan. 17, 2006).
[6] Plaintiff also attaches an EEOC "affidavit of support" signed on April 27, 2017, in which she states her "last day of employment" was December 8, 2016. ECF No. 12 at 53.

because of her religion generally or because her religious practice conflicted with defendant's policies. Plaintiff fails to allege any facts connecting her termination to a discriminatory motive. She does not allege discriminatory comments by decision makers or preferable treatment of other employees based on religious beliefs. Compare Shields v. NYC Health & Hosps. Corp., 489 F. Supp. 3d 155, 163 (E.D.N.Y. 2020) (dismissing Title VII claim where plaintiff did not allege any discriminatory comments or comparators that suggested a protected characteristic played a role in the alleged adverse actions), with Chukwueze v. NYCERS, 891 F. Supp. 2d 443, 455 (S.D.N.Y. 2012) (finding complaint sufficiently alleged discrimination under Title VII where Christian plaintiff's requests for religious accommodations were met with "hostility and opposition," and members of other groups were given favored treatment).

Likewise, there is no support for an inference of discrimination in plaintiff's complaint or in the material annexed to plaintiff's request for a certificate of default. To the contrary, in a memorandum to defendant's "Executive Staff" dated December 12, 2016, plaintiff writes that she "demonstrated . . . patience, awaiting arrangements to have [her] Sabbath observation request honored" but that she was being recommended for termination "due to not signing Training and Warning documents, and other memos." ECF No. 12 at 42. This memorandum undermines plaintiff's discrimination claim and states a different reason for plaintiff's termination not related to her Sabbath observance. See Mines v. City of New York/DHS, No. 11-CV-7886, 2013 WL 5904067, at *8 (S.D.N.Y. Nov. 4, 2013) (holding plaintiff did not establish that defendant violated Title VII by failing accommodate her religious objection to a Sunday work schedule where plaintiff "failed to provide any evidence that she was threatened with disciplinary action if she refused to show up for work on Sundays or if she used her annual leave in order to take off Sundays

9

for religious reasons"); O'Neill v. City of Bridgeport Police Dep't, 719 F. Supp. 2d 219, 226 (D. Conn. 2010) (failure to accommodate claim cannot be based on adverse actions that were not caused by failing to comply with policy giving rise to plaintiff's accommodation request). The Court cannot infer that plaintiff was terminated or threatened with other discipline "[as] the consequence of the plaintiff's exercise of [her] religious beliefs." Khan v. Fed. Rsrv. Bank of New York, No. 02-CV-8893, 2005 WL 273027, at *5 (S.D.N.Y. Feb. 2, 2005).[7] There is no basis in plaintiff's motion for the Court to infer that plaintiff's termination "occurred under circumstances giving rise to an inference of discrimination." Shields, 489 F. Supp. 3d at 163. The EEOC's probable cause determination in plaintiff's favor "is not sufficient, standing alone, to allege a plausible claim." Clayborne, 2015 WL 251586, at *3.

C.  Retaliation

Liberally construed, plaintiff's complaint raises a claim that defendant retaliated against her after she requested a religious accommodation. Title VII forbids an employer from retaliating against an employee opposed to "any practice made . . . unlawful" by the statue, or because the employee filed "a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To establish a *prima facie* case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012). Retaliation claims under Title VII are analyzed

---

[7] Plaintiff's case therefore presents a very different set of facts from those in Groff, where the plaintiff experienced "progressive discipline" for failing to work on Sundays, culminating in his resignation in the face of expected termination. Groff, 143 S. Ct. at 2287 (internal quotation and citation omitted).

under the <u>McDonnell Douglas</u> burden-shifting framework. <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 315 (2d Cir. 2015). "The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" <u>Vega</u>, 801 F.3d at 90 (quoting <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 57 (2006)).

To establish a causal connection between the protected activity and an adverse action that followed, plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." <u>Id.</u> at 90 (citation omitted). But-for causation does not require that retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." <u>Id.</u> at 91 (quoting <u>Zann Kwan v. Andalex Grp., LLC</u>, 737 F.3d 834, 846 (2d Cir. 2013)). The fact that an employer took adverse action against an employee shortly after they engaged in protected activity may support an inference of "but for" causation. <u>Id.</u> (quoting <u>Zann Kwan</u>, 737 F.3d at 845); <u>Littlejohn</u>, 795 F.3d at 319.

Here, plaintiff requested a religious accommodation for her Sabbath Observance in June 2016. Compl. at 6. Requesting a religious accommodation is a protected activity under Title VII. <u>Stancu v. New York City/Parks Dept</u>, No. 20-CV-10371, 2022 WL 4581844, at *6 (S.D.N.Y. Sept. 29, 2022); <u>Levy v. Legal Aid Soc'y</u>, 408 F. Supp. 3d 209, 216–17 (E.D.N.Y. 2019). However, for reasons the Court has already explained, plaintiff fails to plausibly allege a causal connection between her request for an accommodation in June 2016 and her loss of employment in December 2016. <u>Levy</u>, 408 F. Supp. 3d at 216-17 (dismissing Title VII retaliation claim because although the plaintiff's "protestations" and request for an accommodation regarding work events scheduled

"during Jewish holidays and the Sabbath . . . constitute protected activities, Plaintiff has not adequately alleged a causal connection between such activities and any adverse employment action"). Plaintiff cannot rely on temporal proximity, as the six-month gap between plaintiff's June 2016 request and her December 2016 loss of employment is too long to show but-for causation here.[8] De Figueroa v. New York, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (noting that where a plaintiff pleads a causal connection based on timing alone, the Second Circuit has generally held that "a lapse of time beyond two or three months will break the causal inference"); see Gallardo v. IEH Corp., No. 21-CV-3257, 2022 WL 4646514, at *7 (E.D.N.Y. Oct. 1, 2022) (dismissing plaintiff's retaliation claim, because five months had passed between plaintiff's complaint and the adverse employment action, and there was an "absence of any other facts suggesting she was terminated because of the complaint"); Dechberry v. New York City Fire Dep't, 124 F. Supp. 3d 131, 155 (E.D.N.Y. 2015) (holding six-month gap between protected activity and retaliatory conduct is "too temporally attenuated to infer a causal connection").

## LEAVE TO AMEND

A *pro se* plaintiff should ordinarily be granted an opportunity to "amend his complaint prior to its dismissal for failure to state a claim. . . ." Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation and citation omitted). Here, the EEOC probable cause determination provides an "indication that a valid claim might be stated" and therefore I recommend that plaintiff

---

[8] While plaintiff allegedly requested an accommodation on "on several occasions," compl. at 6, she does not allege any other requests beyond June 2016. Plaintiff's "EEOC Summarizing Statement" annexed to her request for a certificate of default states that she wrote a letter to her church (not to defendant) in early October 2016 which "details [her] complaints that [her] Sabbath request was not granted by Ms. Burwell, Treatment Supervisor." ECF No. 12 at 55. Plaintiff's December 19, 2016 letter to defendant's CEO and human resources department references her accommodation request, but the letter was written after her termination. ECF No. 12 at 20 ("I am very sorry that the Sabbath arrangements did not work as I had anticipated, when my church prepared a letter in May 20, 2016.").

should be afforded 45 days to file an amended complaint. Clayborne, 2015 WL 251586, at *4 (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795–96 (2d Cir. 1999)).

Although plaintiff should be given the chance to amend, plaintiff may decide not to pursue this matter in light of the fact that defendant may no longer be in business. Ultimately, even if plaintiff files an amended complaint and prevails in this action, she may be unable to obtain the relief she seeks from defendant. If this Report is adopted and plaintiff files an amended complaint, any amended complaint will completely replace the original complaint. Plaintiff should attach all documents she wishes the Court to consider to her amended complaint. Plaintiff should also address the issues raised by this Report including whether defendant had fifteen or more employees, whether plaintiff is alleging she was terminated based on discrimination, and any facts that give rise to an inference that defendant discriminated against her based on her religion, or that defendant retaliated against her because of her request for an accommodation of her Sabbath observance.[9]

## CONCLUSION

As plaintiff fails to establish that defendant discriminated against her or retaliated against her in violation of her rights under Title VII, it is respectfully recommended that plaintiff's motion for a default judgment should be denied. It is further recommended that should this Report be adopted, plaintiff should be afforded 45 days to file an amended complaint. If plaintiff fails to file an amended complaint within 45 days, the Court should dismiss this action.

---

[9] Plaintiff may request assistance from the Federal Pro Se Legal Assistance Project, a free, limited-scope legal assistance clinic operated by the City Bar Justice Center of the New York City Bar Association. A flyer for the Justice Center is attached to this Order.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections must be made within the fourteen-day period.  Failure to file a timely objection to this Report generally waives any further judicial review.  Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: July 20, 2023
        Brooklyn, New York

14